UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| JOSE MIGUEL OQUENDO, | |
|---|---|
| Plaintiff, | |
| -v- | No. 16-CV-1828 (KMK) |
| QUALITY CHOICE CORRECTIONAL HEALTHCARE; KATHY PETRINO, CEO Quality Choice Healthcare; MARIA KARIMI, Medical Director/Medical Doctor; CARL DUBOIS, Orange County Sheriff; KENNETH DECKER, Orange County Correctional Administrator, | OPINION & ORDER |
| Defendants. | |

Appearances:

Jose Miguel Oquendo
Goshen, NY
*Pro se Plaintiff*

David A. Beatty, Esq.
Kaufman Borgeest & Ryan LLP
Valhalla, NY
*Counsel for Defendants Quality Choice Correctional Healthcare and Kathy Petrino*

Kellie E. Lagitch, Esq.
Office of the Orange County Attorney
Goshen, NY
*Counsel for Defendants Carl DuBois and Kenneth Decker*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Jose Miguel Oquendo ("Plaintiff") brings this Action against Quality Choice Correctional Healthcare ("Quality Choice"), Kathy Petrino ("Petrino"), Dr. Maria Karimi ("Dr. Karimi"), Carl DuBois ("DuBois"), and Kenneth Decker ("Decker") (collectively, "Defendants"). Plaintiff alleges that Defendants violated his rights under 42 U.S.C. § 1983 by failing to provide him with proper medical care to treat his diabetes even though they were aware

of his diagnosis, which resulted in Plaintiff's loss of sight in his left eye and loss of feeling in the toes on his right foot. (*See generally* Compl. (Dkt. No. 2).) Before the Court are Defendants' Motions To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. Nos. 24, 30.)[1] For the reasons to follow, the Motions are granted.

## I. Background

### A. Factual Background

The following facts are taken from the Complaint, and are assumed true for the purpose of resolving the Motions.

On September 3, 2015, Plaintiff was taken into custody at Orange County Correctional Facility ("OCCF") where he informed a nurse that he is a "severe type [1] diabetic"; he was told that he would see a doctor within a couple of days. (Compl. at unnumbered 3.)[2] Plaintiff met with Dr. Karimi on September 4, 2015 and informed her that he is diabetic and dependent on insulin. (*See id.*) Plaintiff provided Dr. Karimi with information on the medications he was taking, his pharmacy, and his primary care doctor. (*See id.*) Dr. Karimi told Plaintiff she would get the information about Plaintiff's prescriptions and have them filled the next day. (*See id.*)

On September 6, 2015, Plaintiff began to feel lightheaded, experience pain in his leg, and have blood in his eye. (*See id.*) Plaintiff told multiple officers, nurses, and Dr. Karimi about his symptoms and submitted several sick call sheets, but he was told there was no insulin available for him. (*See id.*) On September 10, 2015, after Plaintiff began experiencing tingling in his right

---

[1] All Defendants except for Dr. Karimi have filed Motions. As noted below, Dr. Karimi has not yet been served in this case.

[2] Because Plaintiff has inserted two unnumbered pages in his Complaint to include additional facts, the page numbers used throughout this Opinion & Order for the Complaint will refer to the ECF-generated page numbers in the upper-right-hand corner.

foot, poor vision in his right eye, and severe pain in his right leg, he went to another nurse about his symptoms, but was informed that she could not give him insulin because it had not been prescribed for him. (*See id.* at unnumbered 4.) Plaintiff had not received any insulin from September 9, 2015 to September 25, 2015. (*See id.* at unnumbered 3–4.) On or about September 25, 2015, Plaintiff saw a doctor who, upon seeing Plaintiff's foot and eye, immediately sent Plaintiff to the emergency room at an outside hospital. (*See id.* at unnumbered 4.)

On February 17, 2016, Plaintiff was arrested again and brought to OCCF. (*See id.*) Plaintiff informed a nurse that he had needed to be revived the day before because his blood glucose was at 560 and that he was experiencing pain in his chest and lungs. (*See id.* at unnumbered 4.)[3] Plaintiff also informed the nurse about other complications—including that he felt like his ribs were fractured, he was suffering from severe chronic pain, and he felt like he was going to die—and about the medications he was taking. (*See id.* at unnumbered 4.) Plaintiff was told he would see a doctor in a few days, but did not see one until after he put in his eighth sick call. (*See id.*) Plaintiff was in severe pain and agony from February 16, 2016 through February 26, 2016, during which he was kept in a freezing cold cell. (*See id.* at unnumbered 5.) Plaintiff alleges the medical and correctional staff "were fully aware of [his] medical conditions yet they constantly lied to [him] and neglect[ed] to do anything but give [him his] medications [and] [d]iet meal[s]." (*Id.*)

---

[3] Plaintiff does not provide a unit of measurement for his blood glucose level, but the Court presumes Plaintiff means 560 mg/dl because that is the standard unit used for blood glucose in the United States. *See Checking Your Blood Glucose*, American Diabetes Association, http://www.diabetes.org/living-with-diabetes/treatment-and-care/blood-glucose-control/checking-your-blood-glucose.html? (last visited July 26, 2017).

3

As of November 1, 2016, Plaintiff is now "legally blind out [of] [his] left eye due to [the] lac[k] of insulin that [he] did not receive [during] th[e relevant] time." (*See* Letter from Plaintiff to Court (Nov. 1, 2016) ("Nov. 1 Plaintiff Letter") (Dkt. No. 37).)

As a result of his alleged injuries, Plaintiff seeks $300,000 in general damages, $400,000 in compensatory damages, $500,000 for mental anguish, and $500,000 in punitive damages. (*See* Compl. at unnumbered 7.)

B. Procedural Background

Plaintiff filed his Complaint on March 11, 2016. (*See* Dkt. No. 2.) Plaintiff's request to proceed in forma pauperis was granted on April 21, 2016. (*See* Dkt. No. 6.) On July 27, 2016, counsel for Defendants Quality Choice, Petrino, and, purportedly, Dr. Karimi submitted a letter to the Court requesting permission to file a motion to dismiss on behalf of Quality Choice and Petrino pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. No. 20.) Defendants DuBois and Decker ("County Defendants") submitted a similar letter on August 3, 2016, also requesting to file a motion to dismiss. (*See* Dkt. No. 21.) On August 15, 2016, the Court entered an Order that all Defendants could file their motions to dismiss by September 10, 2016, and Plaintiff should respond to any motions by October 10, 2016. (*See* Dkt. No. 23.)

On September 9, 2016, County Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 24–26.) On September 29, 2016, after a failed first attempt to file their papers electronically, Quality Choice and Petrino filed a separate Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 30–32.) Dr. Karimi did not join the Motion as she has never been served. (Letter from David A. Beatty, Esq., to Court (July 27, 2016) ("Beatty July Letter") 1 (Dkt. No. 20); *see also* Dkt. No. 9.) Plaintiff sent a letter dated November 1, 2016 to the Court which was filed on December 13, 2016. (*See* Nov. 1 Plaintiff

4

Letter.) Plaintiff explained that he does not know much about civil law and although he requested a pro se manual, he never received one, which has impacted his ability to answer any motions. (*See id.*) The Court requested that the pro se clerk send Plaintiff the manual on December 20, 2016. (*See* Dkt. No. 38.) At this time, however, the pro se manual has been discontinued. Plaintiff has not otherwise responded to the Motions.

II. Discussion

A. Standard of Review

Both Motions To Dismiss were filed pursuant to Rule 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief can be granted. (*See* Dkt. Nos. 24, 30.)

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted). Instead, the Supreme Court has emphasized that the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than

5

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

Where, as here, the complaint was filed pro se, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). Despite this more lenient standard, "to survive a motion to dismiss, a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face." *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *2 (S.D.N.Y. July 12, 2012).

B. Analysis

The Complaint does not identify what claims Plaintiff intends to raise in this case. Because, however, of the "special solicitude" owed to pro se plaintiffs, the Court will construe the Complaint as raising claims of deliberate indifference to a serious medical condition and unconstitutional conditions of confinement relating to the temperature of Plaintiff's cell. Because Plaintiff is a pretrial detainee, (*see* Decl. of Kellie E. Lagitch in Supp. of Mot. To Dismiss ("Lagitch Decl.") ¶ 3 (Dkt. No. 25)), his claims relating to the conditions of his confinement are analyzed under the Fourteenth Amendment, *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). As discussed below, however, regardless of the substantive basis for Plaintiff's claims, Plaintiff has failed to state a claim against the moving Defendants, and thus his claims against those Defendants must be dismissed.

1. County Defendants' Motion To Dismiss

County Defendants argue that Plaintiff's claims against them must be dismissed because Plaintiff fails to "specify the manner in which each of the named County Defendants was

6

personally involved in violating his constitutional rights." (*See* Lagitch Decl. ¶ 2.) County Defendants further argue that Plaintiff has not adequately shown that the alleged lack of medical care he received at OCCF meets "the threshold required to sustain a cause of action for 'deliberate indifference' to his medical needs." (*Id.*)

"It is well settled in th[e] [Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brown v. City of New York*, No. 13-CV-6912, 2017 WL 1390678, at *6 (S.D.N.Y. Apr. 17, 2017) (internal quotation marks omitted). In order to establish liability, a plaintiff must show that the defendants "were personally involved in the allegedly unlawful conduct," *id.* at *7, because "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior," *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (italics omitted). Under § 1983, a supervisor may be shown to have been liable in the following ways:

> (1) actual direct participation in the constitutional violation[;] (2) failure to remedy a wrong after being informed through a report or appeal[;] (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue[;] (4) grossly negligent supervision of subordinates who committed a violation[;] or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).[4]

---

[4] Though the decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), has called into question the validity of the *Colon* factors, this Court "has already expressed its agreement with those cases holding that all five categories under *Colon* are still valid unless and until the Second Circuit holds otherwise." *Samuels v. Prack*, No. 13-CV-8287, 2017 WL 934706, at *6 (S.D.N.Y. Mar. 8, 2017).

Plaintiff has not alleged any way in which County Defendants were personally responsible for, or involved in the circumstances that resulted in, either his lack of medical treatment or the conditions of his cell. Neither County Defendant is even mentioned by name or position in the body of the Complaint, which is itself ground for dismissal. *See Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims where the plaintiff "name[d] [police officers] as defendants in the caption, but . . . never mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the only additional references to these defendants [were] merely conclusory statements about their personal involvement and liability"). Further, even though DuBois is an Orange County Sheriff and Decker is an Orange County Correctional Administrator, Plaintiff has not suggested the existence of a company-wide policy or custom, let alone one created by County Defendants, which would have resulted in his alleged lack of medical treatment or would have caused his cell to be "freezing." The mere existence of a "prison chain of command" is not enough to find that County Defendants are personally liable. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Based on the lack of any claim linking the actions of DuBois and Decker to the injuries allegedly suffered by Plaintiff, County Defendants' Motion To Dismiss is granted.

### 2. Quality Choice and Petrino's Motion To Dismiss

Similar to County Defendants, Quality Choice and Petrino both argue that Plaintiff's Complaint must be dismissed under Rule 12(b)(6) because Plaintiff failed to "plead any cognizable claims upon which relief could be granted." (Mem. of Law in Supp. of Defs. Kathy

8

Petrino & Quality Choice Healthcare's Mot. To Dismiss ("QC Mem.") 1 (Dkt. No. 32).) Quality Choice is a third-party administrator which provides healthcare at OCCF, but does not employ physicians, and Petrino is an executive at Quality Choice. (*See id.* at 2.)

a. Quality Choice's Liability as a Municipal Actor

As a general rule, private entities are not liable under § 1983, but "conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974); *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided . . . ." (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). For example, when a private company provides medical care in prisons, it "performs a role traditionally within the exclusive prerogative of the state and therefore . . . is the functional equivalent of the municipality." *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013). Quality Choice will therefore be treated as a municipal actor for the purposes of these Motions. *See Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351, 2017 WL 2274485, at *5 (S.D.N.Y. May 24, 2017) ("Corizon, although a private entity, is treated as a municipal actor for purposes of this lawsuit.").

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that municipalities may be sued under § 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." 436 U.S. 658, 690 (1978).

"It is axiomatic that municipalities cannot be held liable pursuant to § 1983 on a respondeat superior theory." *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (italics omitted) (citing *Monell*, 436 U.S. at 690). "To hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (alteration omitted). There are four ways a plaintiff may allege a policy or custom:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of [the] plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Betts v. Rodriquez*, No. 15-CV-3836, 2016 WL 7192088, at *5 (S.D.N.Y. Dec. 12, 2016) (internal quotation marks omitted).

Here, Plaintiff has not alleged any formal policies or practices that would substantiate a claim under *Monell*. In the Complaint, Plaintiff does not allege the existence of a policy put in place by Quality Choice to deny or delay someone being held at OCCF from receiving medical care. Further, Plaintiff never alleges any actions or decisions made by anyone working for Quality Choice who had "final decision making authority" which resulted in the delay of his medical care. While Plaintiff could possibly be implying that the lack of treatment he received was actually part of an implicit and accepted custom at OCCF, there are no facts in the Complaint that connect his treatment to anyone from Quality Choice who had knowledge of this practice coupled with the power to enact or change the policy, thus dooming Plaintiff's claim. *See Thomas v. City of New York*, No. 16-CV-2924, 2016 WL 3951094, at *2 (E.D.N.Y. July 20,

2016) (granting a motion to dismiss where the "plaintiff [did] not allege . . . a policy officially adopted by the City of New York and a causal connection between a policy and the deprivation of [the] plaintiff's constitutional rights"). Plaintiff does say that he had to put in multiple call sheets before being seen by members of the medical staff, but on other occasions, it appears he was seen by nurses or doctors shortly after complaining to officers about his symptoms, as well as upon his arrest in both September 2015 and February 2016. (*See* Compl. at unnumbered 3–4.) Plaintiff also admits that he did receive his "medications as well as [his] [d]iet meal[s]." (*Id.* at unnumbered 5.) At most, Plaintiff might be understood as alleging that the medical staff at Quality Choice were not properly trained because they did not provide Plaintiff with his prescriptions. Plaintiff has not, however, provided enough detail in his Complaint to support that inference.

### b. Petrino's Personal Involvement

As discussed above, the Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brown*, 2017 WL 1390678, at *6 (internal quotation marks omitted) (quoting *Wright*, 21 F.3d at 501). Even though Petrino is an executive at Quality Choice, Plaintiff still has to plead that she was personally involved in his alleged deprivation of care because "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Hernandez*, 341 F.3d at 144 (italics omitted). Plaintiff does not even mention Petrino by name or position in the body of the Complaint; there is nothing linking Petrino to Plaintiff's treatment either through direct involvement or through an allegation that she had knowledge of what was happening to him and failed to take action. *See Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("[T]he existence of a municipal policy or

11

practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff."); *Rodriguez v. City of New York*, 649 F. Supp. 2d 301, 307–08 (S.D.N.Y. 2009) ("[T]he alleged failure to . . . train is here alleged in only the most conclusory, and legally insufficient, manner."). Plaintiff also does not allege that there is a policy at Quality Choice or OCCF, let alone one put in place by Petrino, which resulted in his denial of care. Accordingly, there is no basis upon which Petrino may be held liable. *See White v. Schriro*, No. 16-CV-6769, 2017 WL 3268202, at *5 (S.D.N.Y. July 31, 2017) (dismissing § 1983 claims against a manager at a private medical group providing medical services to prisoners because the plaintiff did "not allege any facts that would demonstrate the personal involvement of [the defendant]"); *Baptiste v. Warden at Ottisville, FCI N.Y.*, No. 09-CV-5523, 2010 WL 3185748, at *6 (S.D.N.Y. Aug. 11, 2010) (dismissing *Bivens* claim against a director of a private medical group providing medical services to prisoners because "[e]ven under a liberal reading of his complaint and opposition papers, [the plaintiff] appear[ed] to base his claim against the [d]irector entirely on supervisory liability").[5]

### 3. State Law Claims as to All Moving Defendants

County Defendants contend that if the Complaint can be construed as raising any state law claims, those claims should be dismissed because Plaintiff has not complied with the notice-of-claim requirements. (*See* Mem. of Law on Behalf of County Defendants 13 (Dkt. No. 26).) Similarly, Defendants Quality Choice and Petrino also request that any possible state law claims be dismissed because of Plaintiff's "failure to comply with the notice of claim provisions." (QC

---

[5] The Complaint does not allege, and the Court cannot conceive of, any basis upon which Quality Choice or Petrino could be liable for the temperature of Plaintiff's cell.

Mem. 9.) The Court does not need to reach merits of these claims, however, because it declines to exercise supplemental jurisdiction over any state law claims.

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)). The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (internal quotations omitted). "District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each particular case.'" *Id.* at 391-92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

Because the Court finds that all federal claims against the moving Defendants (who are the only Defendants served thus far) have been dismissed, the Court declines to exercise supplemental jurisdiction over any possible state law claims at this time. Plaintiff may, however,

reassert those state law claims in any amended complaint, and the Court's acceptance of jurisdiction over those claims will be reassessed at the appropriate time.[6]

### III. Conclusion

For the reasons stated above, both Quality Choice and Petrino's Motion To Dismiss and County Defendants' Motion To Dismiss are granted.

In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. Failure to do so will result in the dismissal of the claims against these Defendants with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 24, 30), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated: September 6, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[6] While the Court has not addressed the merits of Defendants' Motions To Dismiss the state law claims, Plaintiff is advised that he must plead to having timely satisfied the state notice-of-claim requirements if he elects to file an amended complaint. *See O'Leary v. City of New York*, 938 F. Supp. 2d 410, 416 (E.D.N.Y. 2013) ("Notice of claim requirements are strictly construed by New York state courts, and failure to provide a notice of claim generally requires dismissal of a plaintiff's state law claims." (internal quotation marks omitted)).

14